**LAW OFFICES OF MARK S. ADAMS**
3031 W. March Ln Ste. 120
Stockton, California 95219
Telephone (209) 481-3485
**MARK S. ADAMS**
CA State Bar No. 78706

**Attorney for Plaintiff, Ronald Hittle**

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RONALD HITTLE,**<br><br>    Plaintiff,<br><br>vs.<br><br>**THE CITY OF STOCKTON, CALIFORNIA**, a municipal corporation; **ROBERT DEIS**, in his official capacity and as an individual; **LAURIE MONTES**, in her official capacity and as an individual; and **DOES 1-100** inclusive,<br><br>    Defendants. | **Case No.: 2-12-CV-00766-TLN-KJN**<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR**<br><br>1. **RELIGION DISCRIMINATION (FEHA)**<br>2. **RELIGION DISCRIMINATION (TITLE VII)**<br>3. **ASSOCIATION DISCRIMINATION (FEHA)**<br>4. **ASSOCIATION DISCRIMINATION (TITLE VII)**<br>5. **RETALIATION (FEHA)**<br>6. **RETALIATION (TITLE VII)**<br>7. **FAILURE TO PREVENT DISCRIMINATION AND RETALIATION (FEHA)**<br>8. **VIOLATION OF 42 USC § 1983**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ronald Hittle brings this action against the City of Stockton, and Does 1 through 100, for general, compensatory, punitive, and statutory damages, costs and attorneys' fees, resulting from the Defendants' unlawful and tortious conduct, as grounds therefore alleges:

**PARTIES**

1.  Plaintiff Ron Hittle ("Hittle") is an individual and is, and was at all times relevant herein, a resident of San Joaquin County, California. At all times relevant herein, Hittle was employed in San Joaquin County, California, and an "employee" as defined by California

_____
Complaint for Damages
Page 1 of 16

1  Government Code § 12926 and 42 USC § 2000e-2(a).  Hittle is and, at all times relevant was, a
2  Christian.

3    2.    Hittle is informed and believes and thereon alleges that the City of Stockton ("the
4  City") is a municipal corporation and an "employer" as defined by Gov. Code §§ 12926(d),
5  12940(a), 12940(j)(4)(A), and 42 USC § 2000e(b).

6    3.    Hittle is informed and believes and thereon alleges that Robert Deis was a
7  supervisor as defined by Gov. Code § 12926(s), and an agent as defined by 42 USC § 2000e(b).
8  At all times relevant, Deis was an individual and a resident of San Joaquin County.  Hittle hereby
9  sues Deis in his official capacity as City Manager for the City of Stockton, and in his individual
10 capacity.

11    4.    Hittle is informed and believes and thereon alleges that Laurie Montes was a
12 supervisor as defined by Gov. Code § 12926(s), and an agent as defined by 42 USC § 2000e(b).
13 At all times relevant, Montes was an individual and a resident of San Joaquin County.  Hittle
14 hereby sues Montes in her official capacity as Deputy City Manager for the City of Stockton, and
15 in her individual capacity.

16    5.    Hittle is not aware of the true names and capacities of the Defendants sued herein
17 as Does 1 through 100, whether individual, corporate, associate, or otherwise, and therefore sues
18 such Defendants by these fictitious names.  Hittle will amend this Complaint to allege their true
19 names and capacities when ascertained.   Hittle is informed and believes, and on that basis
20 alleges, that each of the fictitiously named Defendants is responsible in some manner for the
21 occurrences herein alleged and that Hittle's  injuries and damages herein alleged were legally
22 caused by such Defendants.  Unless otherwise indicated, each Defendant was acting within the
23 course and scope of said agency and/or employment, with the knowledge and/or consent of said
24 co-Defendant.

25    6.    Hittle is informed and believes and thereupon alleges that at all times mentioned
26 herein, each of the Defendants, including each Doe defendant, was acting as the agent, servant,
27 employee, partner and/or joint venturer of and was acting in concert with each of the remaining

Defendants, including each Doe Defendant, in doing the things herein alleged, while at all times acting within the course and scope of such agency, service, employment partnership, joint venture and/or concert of action. Each Defendant, in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment, with the knowledge and/or consent of the remaining Defendants.

## VENUE AND JURY TRIAL DEMAND

7. Venue is proper under 28 USC § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the subject judicial district. Hittle hereby demands a jury trial.

## SUBJECT MATTER JURISDICTION

8. This Court has subject matter jurisdiction over this action under 28 USC § 1331 because it arises under the Constitution and laws of the United States (including 42 USC § 1983 and Title VII of the 1967 Civil Rights Act) and because there is a substantial question of federal law involved.

## GENERAL ALLEGATIONS

9. In March of 1987, Hittle began working for the City of Stockton Fire Department as a firefighter. Over the years, he rose through the Department to attain the rank of Chief.

10. On or about July 9, 2010, Hittle had an introductory meeting with Bob Deis, the newly appointed City Manager for the City of Stockton. Deis asked Hittle for his personal background, whereupon Hittle remarked that he was a devout Christian and that his religion instilled in him strong values of honesty and integrity. Deis cut Hittle off and changed the subject.

11. In mid-2010, Laurie Montes, the Deputy City Manager for the City of Stockton, told Hittle that he and his staff members needed to improve their leadership skills, and that they should attend leadership training.

12. Heeding Montes' advice, on August 5 and 16, 2010, Hittle and three fellow Stockton Fire Department officers—Matt Duaime, Paul Willette, and Jonathan Smith—attended

a Christian-affiliated leadership seminar in Livermore, California called the Willow Creek Global Leadership Summit. The men paid the attendance fee out of their own funds, and dressed in plain clothes when attending. The other officers share a common bond, Christian fellowship.

13. At all times Hittle was a devout Christian who would frequently share his faith with anyone he could, including Defendants Deis and Montes. Hittle believed that by attending a leadership conference like the Willow Creek Global Summit, he would satisfy the City's requirement that he improve his leadership skills, while at the same time doing so in a manner consistent with his religious beliefs i.e. Christian Values are great leadership values. Before he was fired, he explained this to the City which fired him nevertheless, and put it in writing in an August 24, 2011 "Notice of Intent to Terminate Employment."

14. In or about September of 2010, an anonymous letter was sent to City Hall, stating that Hittle held a property interest in a cabin retreat in along with other firefighters and Dave Macedo, President of the International Association of Firefighters Local 456. Soon thereafter, a highly negative article was printed in the Stockton Record, which claimed that Hittle was so close to the union as to cloud his professional judgment.

15. In fact, Hittle and Macedo had kept property interests in a cabin in Dorrington, California for five years, along with Matt Duaime (Battalion Chief, Stockton F.D.), Al Anton (Captain, retired, Stockton F.D.), and the men's wives. Nevertheless, it was common practice among senior Fire Department officers and police department managers and the Chief to pool their resources to purchase real estate, boats, etc. and those persons were not fired for their association with one another as was Hittle.

16. At the time of purchase, Hittle held the title of Deputy Chief; and Macedo held the title of Captain and was not yet president of the firefighters' union. However, after he became President of the firefighters union, Hittle's association with Macedo is protected since it its illegal under state and federal law to punish and or retaliate against workers for advocating for union rights. Hittle felt this association, even after Macedo became president of the union, furthered the City's interests by his having a good social and working relationship with Macedo.

However Deis was angry with Hittle for his association with Macedo because, at this time, the City was in a fight with the union over closure of a station house, and Measure H that would remove union members' right to binding arbitration of disputes and would weaken protection for the Fire Department managers by an stripping Civil Service Protection from them.  Furthermore, weeks before Hittle attended the Willow Creek Global Leadership Summit, Montes recited rumors  to Hittle that Hittle had organized a "Christian coalition" within the ranks of the Fire Department, and that this was  improper.  Hittle protested to her stating that there was nothing wrong with this group and that the City can't tell him  not to do it. Montes brought this up to Hittle at least twice and he protested the same way each time.

17.     In or about October of 2010, Montes told Hittle that she was aware that he had attended a Christian-affiliated seminar and that was unacceptable for him to have done so despite his telling her that it was consistent with his faith and attended by secular and religious leaders from private and public sector.

18.     Hittle protested this, saying that he attended a leadership seminar at Montes' behest, that it was highly beneficial for his professional development, and that it did not matter that the seminar was Christian in its character; the focus of the seminar was leadership development, albeit Christian based.

19.     Soon thereafter, on or about November 1, 2010, Hittle was summoned to the office of the City Manager, Robert Deis.  With Montes also present, Deis presented Hittle with a list of approximately ten alleged violations of City policy, including Hittle's attendance at a religious-themed seminar, his permitting subordinates to attend the seminar with him, and his co-ownership of the cabin retreat.  Deis told Hittle that unless he accepted a demotion to Battalion Chief, he would be investigated for these purported violations.  Deis even threatened Hittle, saying words to the effect of "I'll drag your name through the mud," "the investigation will be embarrassing for you and your family," and "you will probably win in a long, expensive legal battle, but your reputation will suffer irreparable harm."  Further, Montes indicated that even if Hittle did accept the demotion, the alleged violations would remain in his file and so could be

used against him later. Hittle protested this proposed action by Deis as being illegal religious and association discrimination and refused to accept the lower position.

20. In or around March of 2011, another negative article appeared in the Stockton Record, this time criticizing Hittle for his attendance of the Willow Creek Summit.

21. On or about March 31, 2011, Hittle was placed on paid administrative leave while the allegations against him were, at the instigation of Deis and/or Montes, investigated.

22. Over the course of two days in April of 2011, Hittle was interviewed at great length by an investigator, acting on behalf of the City, by the name of Trudy Largent. Largent interrogated Hittle on the subjects of the seminar, his personal religious beliefs and those of the other firefighters who attended the seminar, his property interest in the Dorrington cabin, and his hiring of a consultant, George Liepart, with whom Hittle was engaged in a project to build a church school. They share a common bond, namely Christian brotherhood and spent much time praying together for the success for church school. Additionally, although Hittle, at Largent's request, provided names of persons who could substantiate his own testimony, none of those persons were ever contacted.

23. At no time did the City of Stockton inform Hittle that attending a Christian Leadership Conference with other Fire Managers would subject him to termination and the City never attempted to accommodate Hittle by discussing with him alternatives to attending. Moreover the contract with Liepart was approved by the then City Manager and City Council with advice from the City's attorney's office and with full knowledge of Hittle's relationship with Liepart. Moreover, the contract was long since completed in 2008.

24. In addition, Hittle protested his association with Leipart and Macedo as being in violation of his rights. Liepart started working for the City fire department prior to Hittle becoming the fire chief. Chief Gillis hired Liepart directly as a Department head this contract was  within his contract authority. Liepart  was hired to work with administration and Union to bring trust back into the organization.

25. Hittle was appointed Chief in March of 2006. The City wanted to continue with Liepart's work so Hittle had to take it to the council for approval in June of 2006. This was a consent council item that night and one of the council members pulled it to ask Hittle questions about Liepart's performance. It passed unanimously. The Church school (VCMS) that discharge letter speaks about started in fall of 2004, well before Hittle was the Fire Chief. Hittle was not in any financial business activity during his time as Chief.

26. The charge against Hittle contained in the August 24, 2011 letter "Intent to Remove From City Service    that he failed to investigate Liepart's fundraising efforts is false. An internal investigation was conducted after being ordered by Hittle and the result of the investigation was inconclusive. Moreover, the City alleged in its letter of "Intent to Remove From City Service," dated August 24, 2011 that this violated the City policy against "conduct adverse to the welfare and/or good reputation of the City." In fact, no such policy existed and the Defendants Deis and Montes knew it when it terminated Hittle.

27. That same letter that Hittle received was, signed by Defendant Deis, This letter boldly admits that he was being fired him for his attendance at a "Christian" leadership seminar entitled "Global Leadership Summit." However, many government leaders and private business men and women attend this seminar each year. In addition, the policy procedures allegedly violated, by Hittle, City Manager Directive FIN-08 and Article C Section 11 of the Fire Department's Procedure Manual were in fact not violated by Hittle and defendant Deis and Montes knew it but fired him anyway.

28. The other eight reasons for terminating Hittle are either disguises for the real illegal reasons or are simply too vague for understanding or simply not true.

29. The City of Stockton regularly supports the annual "San Joaquin County Prayer Leadership Breakfast" that has been held at its city owned Civic Auditorium which is, and has been, attended regularly by top City Officials, including but not limited to police and firefighters in uniform none of whom were terminated for their attendance.

30. On or about October 3, 2011, Hittle's employment with the City was terminated.

31. On February 29, 2012, Hittle presented a claim with the City in compliance with the Government Claims Act. On information and belief, Hittle alleges that the claim has or will be rejected or deemed rejected by operation of law.

32. Accordingly, on or about February 29, 2012, Hittle filed a complaint with the Department of Fair Employment and Housing (DFEH) against the City of Stockton, alleging religion discrimination, association discrimination, harassment, retaliation, failure to prevent discrimination or retaliation, and termination. Hittle received a right to sue notice from the DFEH that same day and served it on the City Clerk by fax.

33. Additionally, on March 1, 2012, Hittle filed a complaint with the federal Equal Employment Opportunity Commission (EEOC), alleging the same violations as set forth in paragraph 25, above. The EEOC has represented issued a right to sue notice.

34. The list of misconduct by the City in the above allegations is a partial list only, and by way of example.

35. Since being fired from the City, Hittle has suffered economic damages, including loss of wages, loss of benefits, medical expenses and other past and future economic damages. Hittle has also suffered emotional distress and physical symptoms as a result of this prolonged harassment, retaliation and termination of employment. As a further result of the wrongful acts of Defendants, and each of them, Hittle has been forced to hire attorneys to prosecute his claims herein, and has incurred and is expected to incur attorneys' fees and costs in connection therewith.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA GOVERNMENT CODE § 12940(a)**
**(Religion Discrimination - FEHA)**
**Against the City of Stockton and Does 1-100**

36. Hittle hereby realleges and incorporates by reference Paragraphs 1 through 35 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

37. The Fair Employment and Housing Act (FEHA) explicitly prohibits an employer from refusing to hire or employ a person, discharging a person from employment, or discriminating against such person in compensation or in terms, conditions or privileges of employment on the basis of a religious creed, pursuant to Gov. Code § 12940(a).

38. The City at all times material herein was Hittle's employer pursuant to Government Code section 12926(d) and was therefore barred from discriminating in its employment decisions on the basis of a religious creed pursuant to Government Code section 12940(a).

39. At all times herein mentioned, Hittle was qualified for his position with the City.

40. Nonetheless, as set forth above, the City discriminated against Hittle based upon his religious creed, in violation of Government Code section 12940(a).

41. As a direct and legal result of the defendants' discriminatory actions against him, Hittle has suffered emotional distress and physical symptoms, pain and suffering, has lost income and related benefits, past and future, and medical expenses.

42. Wherefore, Hittle has been damaged as set forth below and requests relief as hereafter provided.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 42 USC § 2000e-2(a)(1)**
**(Religion Discrimination – Title VII)**
**Against the City of Stockton and Does 1-100**

43. Hittle hereby realleges and incorporates by reference Paragraphs 1 through 42 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

44. Title VII of the 1967 Civil Rights Act explicitly prohibits an employer from discharging or otherwise discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment on the basis of religion. 42 USC § 2000e-2(a)(1).

45. The City was at all times material hereto Hittle's employer pursuant to 42 USC § 2000e(b) and was therefore barred from discriminating in its employment decisions on the basis of religion, pursuant to 42 USC § 2000e-2(a)(1).

46. At all times herein mentioned, Hittle was qualified for his position with the City.

47. Nonetheless, as set forth above, the City terminated Hittle based upon his religion in violation of 42 USC § 2000e-2(a)(1) and put it in in its August 24, 2011 letter to Hittle announcing the City's intent to terminate him.

48. As a direct and legal result of Defendants' conduct, Hittle has suffered emotional distress and physical symptoms, pain and suffering, has lost income and related benefits, past and future, and has incurred medical expenses.

49. Wherefore, Hittle has been damaged as set forth below and requests relief as hereafter provided.

### THIRD CAUSE OF ACTION
### VIOLATION OF GOVERNMENT CODE SECTION 12940(a)
### (Association Discrimination – FEHA)
### Against the City of Stockton and Does 1-100

50. Hittle hereby realleges and incorporates by reference Paragraphs 1 through 49 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

51. The FEHA explicitly prohibits an employer from refusing to hire or employ a person, discharging a person from employment, or discriminating against such person in compensation or in terms, conditions or privileges of employment on the basis of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age or sexual orientation. Gov. Code § 12940(a). "Race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation" includes a perception that the person has any of those characteristics or that the person is associated with a person who has, or is perceived to have, any of those characteristics. Gov. Code § 12926(m).

52. At all times herein mentioned, Hittle was qualified for the position he held for the City of Stockton.

53. The City of Stockton was at all times material herein Hittle's employer pursuant to Government Code section 12926(d) and was therefore barred from discriminating in its employment decisions in violation of Government Code section 12940(a).

54. Nevertheless, as set forth above, the City discriminated against Hittle in violation of Government Code section 12940(a).

55. As a direct and proximate result of Defendants' conduct, Hittle has suffered emotional distress and physical symptoms, pain and suffering, has lost income and related benefits, past and future, and medical expenses.

56. Wherefore, Hittle has been damaged as set forth below and requests relief as hereafter provided.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF 42 USC 2000e-2(a)(1)**
**(Association Discrimination – Title VII)**
**Against the City of Stockton and Does 1-100**

57. Hittle hereby realleges and incorporates by reference Paragraphs 1 through 56 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

58. Title VII of the 1967 Civil Rights Act explicitly prohibits an employer from discharging or otherwise discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment on the basis of religion. 42 USC § 2000e-2(a)(1). "On the basis of religion" includes a perception that the person is associated with a religious person.

59. The City was at all times material hereto Hittle's employer pursuant to 42 USC section 2000e(b) and was therefore barred from discriminating in its employment decisions on the basis of religion, pursuant to 42 USC § 2000e-2(a)(1).

60. At all times herein mentioned, Hittle was qualified for his position with the City.

_____
Complaint for Damages
Page 11 of 16

61. Nonetheless, as set forth above, the City terminated Hittle based upon his religion in violation of 42 USC § 2000e-2(a)(1).

62. As a direct and legal result of Defendants' conduct, Hittle has suffered emotional distress and physical symptoms, pain and suffering, has lost income and related benefits, past and future, and has incurred medical expenses.

63. Wherefore, Hittle has been damaged as set forth below and requests relief as hereafter provided.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF GOVERNMENT CODE SECTION 12945(h)**
**(Retaliation - FEHA)**
**Against the City of Stockton and Does 1-100**

64. Hittle hereby realleges and incorporates by reference Paragraphs 1 through 63 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

65. The FEHA explicitly prohibits an employer or person from discharging, expelling, or otherwise discriminating against any person because the person has opposed any practices forbidden under the FEHA or because the person has filed a complaint, testified or assisted in any proceeding under the FEHA pursuant to Government Code section 12940(h).

66. The City was at all times relevant herein Hittle's employer pursuant to Government Code sections 12926(d) and 12940(j)(4) and was therefore barred from discriminating against its employees pursuant to Government Code sections 12940(h) and 12945.2(l)(1). Nevertheless, the City retaliated against Hittle because he complained about religion and association discrimination long before he was terminated.

67. As a direct and legal result of Defendants' conduct, Hittle has suffered emotional distress and physical symptoms, pain and suffering, has lost income and related benefits, past and future, and has incurred medical expenses.

68. Wherefore, Hittle has been damaged as set forth below and requests relief as hereafter provided.

## SIXTH CAUSE OF ACTION
**VIOLATION OF GOVERNMENT CODE 42 USC SECTION 2000e-3(a)**
Against the City of Stockton and Does 1-100
(Retaliation – Title VII)

69. Hittle hereby realleges and incorporates by reference Paragraphs 1 through 69 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

70. Title VII of the 1967 Civil Rights Act explicitly prohibits an employer from discriminating against an employee because that person has opposed practices prohibited by Title VII. 42 U.S.C. § 2000e-2(a)(1).

71. The City was at all times material hereto Hittle's employer pursuant to 42 USC § 2000e(b) and was therefore barred from retaliating against him pursuant to 42 USC § 2000e-3(a).

72. Nonetheless, as set forth above, the City retaliated against Hittle in violation of 42 USC section 2000e-2(a)(1).

73. As a direct and legal result of Defendants' conduct, Hittle has suffered emotional distress and physical symptoms, pain and suffering, has lost income and related benefits, past and future, and has incurred medical expenses.

74. Wherefore, Hittle has been damaged as set forth below and requests relief as hereafter provided.

## SEVENTH CAUSE OF ACTION
**VIOLATION OF GOVERNMENT CODE § 12940(k)**
(Failure to Prevent Discrimination and Retaliation - FEHA)
Against the City of Stockton and Does 1-100

75. Hittle hereby realleges and incorporates by reference Paragraphs 1 through 74 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

76. The FEHA requires an employer to "take all reasonable steps necessary to prevent discrimination and harassment from occurring." Gov. Code § 12940(k),

77. The City at all times material hereto was Hittle's employer pursuant to Government Code section 12926(d), and was therefore required to prevent discrimination and retaliation. Gov. Code § 12940(k).

78. The City knew or should have known of the discrimination on the part of its employees, supervisors, managers, such as Deis and Montes and Does 1-100, inclusive.

79. Nevertheless, as set forth above, the City did nothing to rectify or prevent said discrimination and retaliation. Instead, the City consented to, encouraged, permitted, and/or acquiesced to the discrimination and retaliation, ultimately terminating Hittle.

80. As a direct and legal result of the defendants' discriminatory actions against him, Hittle has suffered emotional distress and physical symptoms, pain and suffering, has lost income and related benefits, past and future, and medical expenses.

81. Wherefore, Hittle has been damaged as set forth below and requests relief as hereafter provided.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF 42 USC § 1983**
**(Violation of Constitutional Rights)**
**Against Deis, Montes, and Does 1-100**

82. Hittle hereby realleges and incorporates by reference Paragraphs 1 through 81 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

83. 42 USC § 1983, part of the Civil Rights Act of 1871, prohibits the deprivation of any rights guaranteed under the Constitution and laws by any person acting under color of state or local law.

84. The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The freedom of association is a fundamental right protected by the First Amendment, and is guaranteed as against state and local governments by the Fourteenth Amendment.

85. Nevertheless, as set forth above, Defendants Deis and Montes, under color of state or local law, deprived Hittle of his right to association as provided by the First Amendment to the United States Constitution, because motivating factors for the adverse employment actions taken against Hittle were his association with David Macedo through their joint ownership of real estate and his association with George Liepart through their religious activities as well as Hittle's attendance at a Christian Leadership Conference.

86. At all times relevant herein, Defendants Deis and Montes were implementing or executing, or purporting to implement or execute, a policy statement, ordinance, regulation, decision, or custom of the City of Stockton.

87. The acts taken toward Hittle were carried out by and/or ratified by Defendants Deis and Montes and/or managing agents/employees of Deis and Montes acting in an oppressive, fraudulent and malicious manner in order to injure or damage Hittle, thereby justifying an award to him of punitive damages.

88. As a direct and legal result of Defendants' conduct, Hittle has suffered emotional distress and physical symptoms, pain and suffering, has lost income and related benefits, past and future, and has incurred medical expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Hittle prays judgment against Defendants as follows:

**As to the First, Third, Fifth, and Seventh Causes of Action:**

1. For compensatory, special, and general damages, including lost wages and related benefits, medical expenses, and emotional distress in an amount according to proof, but in excess of the minimum jurisdictional limit of this Court;

2. For statutory attorneys' fees and costs, including those available under Gov. Code §12965(b) and Code of Civil Procedure § 1021.5;

3. For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, including that available under Civ. Code § 3287, according to proof; and

4. For such other and further relief as the court deems proper.

**As to the Second, Fourth, and Sixth Causes of Action:**

1. For compensatory, special, and general damages, including lost wages and related benefits, medical expenses, and emotional distress in an amount according to proof, but in excess of the minimum jurisdictional limit of this Court;
2. For punitive and/or exemplary damages;
3. For statutory attorneys' fees and costs, including those available under 42 U.S.C. 2000e-5(k) and FRCP 54(d)(1);
4. For post-judgment interest according to any applicable provision of law or as otherwise permitted by law; and
5. For such other and further relief as the court deems just and proper.

**As to the Eighth Cause of Action:**

1. For compensatory, special, and general damages, including lost wages and related benefits, medical expenses, and emotional distress in an amount according to proof, but in excess of the minimum jurisdictional limit of this Court;
2. For punitive and/or exemplary damages;
3. For statutory attorneys' fees and costs, including those available under Code of Civil Procedure § 1021.5;
4. For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, including that available under Civil Code section 3287, according to proof; and
5. For such other and further relief as the Court deems proper.

Dated: April 26, 2016

LAW OFFICES OF MARK S. ADAMS

By_____(s)_____
MARK S. ADAMS
Attorneys for Plaintiff
RONALD HITTLE