UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD HITTLE, | No. 2:12-cv-00766-TLN-KJN |
| Plaintiff, | |
| v. | **ORDER** |
| CITY OF STOCKTON, et al., | |
| Defendants. | |

This matter is before the Court on Defendants City of Stockton (the "City"), Robert Deis ("Deis"), and Laurie Montes's ("Montes") (collectively, "Defendants") Motion for Summary Judgment.  (ECF No. 98.)  Also before the Court are Plaintiff Ronald Hittle's ("Plaintiff") Motion for Summary Judgment (ECF No. 133) and Motions to Strike (ECF Nos. 130, 140, 149).  All the foregoing motions have been fully briefed.  For the reasons set forth below, the Court GRANTS Defendants' Motion for Summary Judgment, DENIES Plaintiff's Motion for Summary Judgment, and DENIES as moot Plaintiff's Motions to Strike.

///

///

///

///

///

1

1        **I.       FACTUAL AND PROCEDURAL BACKGROUND**[1]

2        The City appointed Plaintiff as Fire Chief in 2006.  (ECF No. 139-2 at 2.)  The City

3    appointed Montes as Deputy City Manager in 2008.  (*Id.*)  Plaintiff was directed to report to

4    Montes.  (*Id.*)  The City appointed Deis as City Manager on July 1, 2010.  (*Id.*)

5        On November 1, 2010, Defendants issued a notice of investigation to Plaintiff.  (ECF No.

6    99 at 24.)  The notice identified five issues for investigation.  (*Id.*)  Issue One involved "[t]he

7    effectiveness of [Plaintiff's] ongoing supervision and leadership, . . . judgment, . . . contributions

8    to the management team, and the extent to which [he] maintained proper discipline and order

9    within the department."  (*Id.*)  The notice gave examples of Plaintiff's alleged misconduct under

10   Issue One, such as breach of confidential information from within the fire department in

11   September 2010 and Plaintiff's failure to adequately discipline employees on multiple occasions.

12   (*Id.* at 24–27.)  Issue Two involved Plaintiff's "use of City time and [a] City vehicle to attend [a]

13   religious event, . . . failure to properly report time off, . . . potentially approving on-duty

14   attendance at [the] religious event by Fire Department managers . . . [and] potential favoritism."

15   (*Id.* at 27.)  More specifically, Plaintiff was charged with attending a two-day religious "Global

16   Leadership Summit" while on-duty in August 2010 with three other fire department employees.

17   (*Id.*)  Issue Three involved Plaintiff's "apparent endorsement of [a] private consultant's business"

18   based on a picture of Plaintiff and quote attributed to Plaintiff as Fire Chief on a website owned

19   by George Liepart, who provided consulting services to the City.  (*Id.*)  Issue Four involved

20   Plaintiff's "compliance with management directions and capability in respect to budget

21   development."  (*Id.*)  Issue Five involved Plaintiff's "potentially conflicting loyalties" related to

22   his alleged co-ownership of a vacation cabin with the president of the local firefighter's union

23   (Local 456) and the Fire Marshal.  (*Id.* at 28.)

24        On March 30, 2011, Defendants placed Plaintiff on administrative leave pending the

25   outcome of the investigation.  (ECF No. 126 at 15.)  The investigator, Trudy Largent, submitted

26   ───────────────────

27   [1]       The background section provides a general overview of the dispute based on the evidence
     submitted by the parties, from which the Court finds there are no genuine issues of material fact.
     A more detailed analysis of the evidentiary record appears in the discussion below.

28

2

1    an investigation report on August 5, 2011.  (ECF No. 99 at 61.)  The report sustained several of

2    the allegations against Plaintiff.  (*Id.* at 72.)  The report listed the following as Plaintiff's "most

3    serious acts of misconduct": (1) "[i]nappropriate use of City time and a City vehicle to attend a

4    religious event"; (2) "favoritism . . . regarding certain employees of the department in approving

5    their inappropriate attendance on City time of a religious event"; (3) "[c]onflict of interest based

6    on undisclosed personal relationship and financial interest . . . regarding consultant George

7    Liepart"; and (4) "[f]ailure . . . to disclose to the City Manager his financial relationship with the

8    President of the Firefighters Local 456 . . . [which] occurred before, during, and after the Union

9    President was the subject of an Internal Affairs investigation by the department into potential

10   misconduct."  (*Id.* at 73.)

11           On August 24, 2011, Defendants sent Plaintiff a notice of intent to remove from city

12   service.  (ECF No. 99-1 at 998.)  The notice stated the City was removing Plaintiff "because of

13   incompatibility of management styles, change in administration, and [Plaintiff's] apparent

14   inability and/or unwillingness to implement City goals and policies, as indicated by the findings

15   in the confidential investigative report . . . ."  (*Id.*)  The notice summarized Plaintiff's conduct

16   "that support[ed] the City's conclusion" as follows: (1) use of City time and resources to attend a

17   religious leadership event in August 2010; (2) approval of three other employees' attendance at

18   the same religious leadership event on City time; (3) failure to disclose his personal relationship

19   with George Liepart, an individual who provided consulting services to the fire department; (4)

20   failure to investigate an endorsement by Plaintiff on George Liepart's website; (5) failure to

21   disclose co-ownership of a cabin with two potential conflicts of interest; (6) presentation of a

22   Union proposal in March 2011 to put firefighters on a leave of absence instead of laying them off,

23   which was contrary to a department head's duty to further the goals and policies of the City; (7)

24   failure to recommend appropriate discipline for two employees; (8) failure to address the release

25   of confidential patient information to the media; (9) failure to prevent members of the public from

26   perceiving that firefighters were engaged in Union activities while on duty; and (10)

27   communication with the Internal Affairs Investigator that firefighters were "upset" with him for

28   displaying a "Yes on Measure H" sign on his lawn.  (*Id.* at 999–1000.)

1   Although not required by City policy because Plaintiff was an at-will employee,

2   Defendants offered Plaintiff the opportunity to attend a meeting with Deputy City Manager

3   Michael Locke to respond to the removal allegations.  (*Id.* at 998.)  Plaintiff and his attorney

4   appeared at the meeting and presented a letter supporting Plaintiff's position that the meeting did

5   not comport with due process.  (*Id.* at 1040.)  On September 28, 2011, Locke made the following

6   recommendation: "Based on my review of the investigative report and its findings, and in light

7   that [Plaintiff] provided no reasons refuting any of the findings in that report, I recommend that

8   [Plaintiff] be removed as Fire Chief and that he be separated from City employment."  (*Id.* at

9   1041.)  On September 30, 2011, Defendants sent Plaintiff a notice of separation, which served as

10  formal notice that Plaintiff was to be removed as Fire Chief and separated from City service

11  effective October 3, 2011.  (*Id.* at 1045.)

12  Plaintiff filed the operative Second Amended Complaint ("SAC") on April 12, 2018.

13  (ECF No. 51.)  The thrust of Plaintiff's lawsuit is that Defendants discriminated and retaliated

14  against him because of his Christian faith.  (*Id.*)  The SAC sets out the following claims: (1)

15  religious discrimination in violation of California's Fair Employment and Housing Act

16  ("FEHA"), Cal. Gov't Code § 12940(a), against the City of Stockton; (2) religious discrimination

17  in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1),

18  against the City of Stockton; (3) retaliation in violation of FEHA, Cal. Gov't Code § 12945(h),

19  against the City of Stockton; (4) retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a),

20  against the City of Stockton; (5) failure to prevent discrimination and retaliation in violation of

21  FEHA, Cal. Gov't Code § 12940(k), against the City of Stockton; and (6) violation of Plaintiff's

22  constitutional rights, pursuant to 42 U.S.C. § 1983, against Deis and Montes.  (*Id.*)

23  Defendants filed a motion for summary judgment on February 18, 2021 (ECF No. 98),

24  and Plaintiff filed a motion for summary judgment on April 1, 2021 (ECF No. 133).  Plaintiff also

25  filed three motions to strike: (1) a motion to strike evidence offered in support of Defendants'

26  motion for summary judgment (ECF No. 130); (2) a motion to strike the reply to Defendants'

27  motion for summary judgment (ECF No. 140); and (3) a motion to strike evidence in support of

28  Defendants' opposition to Plaintiff's motion for summary judgment (ECF No. 149).

4

## II.    STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at 324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

1   trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is

2   to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

3   trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quotinKg Rule 56(e) advisory committee's

4   note on 1963 amendments).

5       In resolving the summary judgment motion, the court examines the pleadings, depositions,

6   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

7   R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

8   of the opposing party is to be believed and all reasonable inferences that may be drawn from the

9   facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S.

10  at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

11  obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

12  *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

13  1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

14  "must do more than simply show that there is some metaphysical doubt as to the material facts."

15  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead

16  a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

17      **III.   ANALYSIS**

18      Defendants argue they are entitled to summary judgment on all of Plaintiff's claims.

19  (ECF No. 98-1 at 8.)  Plaintiff argues he is entitled to partial summary judgment on his religious

20  discrimination claims.  (ECF No. 134 at 6.)  Because the arguments presented in conjunction with

21  Plaintiff's motion for summary judgment largely mirror the arguments raised in conjunction with

22  Defendants' motion for summary judgment, the Court will address arguments from both motions

23  together.  The Plaintiff also filed three motions to strike, in which Plaintiff takes issue with a

24  considerable amount of Defendants' evidence and filings.  (*See* ECF Nos. 130, 140, 149.)  None

25  of Plaintiff's objections were material to this Court's ruling.[2]  Therefore, the Court DENIES

26  _____

27  [2]    It is noted that both parties raise multiple evidentiary objections.  (*See, e.g.*, ECF Nos.
    130, 140, 149).  To the extent that the objected-to evidence is admissible and relied on, the Court
    OVERRULES the objections.  To the extent that the objected-to evidence is not referenced in this

28  Order, the Court OVERRULES the objections as moot.  *See generally Fraser v. Goodale*, 342

1 │ Plaintiff's motions to strike as moot.  The Court will address the parties' summary judgment

2 │ arguments as to each of Plaintiff's claims below.

3 │           A.      Religious Discrimination Claims (Claims One and Two)

4 │        Claim One alleges religious discrimination under FEHA.  (ECF No. 51 at 9.)  With

5 │ exceptions not relevant here, FEHA makes it an "unlawful employment practice . . . [f]or an

6 │ employer, because of the . . . religious creed . . . of any person . . . to discharge the person from

7 │ employment . . . or to discriminate against the person in compensation or in terms, conditions, or

8 │ privileges of employment."  Cal. Gov't Code § 12940(a).  Claim Two alleges religious

9 │ discrimination under Title VII.  (ECF No. 51 at 10.)  Title VII makes it an "unlawful employment

10 │ practice for an employer . . . to discharge any individual, or otherwise discriminate against any

11 │ individual with respect to his compensation, terms, conditions, or privileges of employment,

12 │ because of such individual's . . . religion . . . ."  42 U.S.C. § 2000e-2(a)(1).  The Court will

13 │ analyze Plaintiff's religious discrimination claims together due to the similarities of Title VII and

14 │ FEHA.  *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 966 F. Supp. 2d 949, 961 (N.D. Cal.

15 │ 2013) ("The analysis of a religious discrimination claim is the same under FEHA and Title VII.").

16 │        Plaintiff alleges the City is liable for religious discrimination under two theories: (1)

17 │ failure to accommodate; and (2) disparate treatment.  (ECF No. 51 at 9–10.)  The Court will

18 │ address religious discrimination under each theory in turn.

19 │ ///

20 │ ///

21 │

22 │ F.3d 1032, 1036 (9th Cir. 2003) (discussing how at summary judgment, courts do not focus on the admissibility of the evidence's form but its contents).  However, the Court will address one

23 │ specific objection that was material to this Order.  Plaintiff objects to Largent's investigation report, contending it is inadmissible hearsay, not properly authenticated, and is untrustworthy.

24 │ (ECF No. 130-1 at 5.)  In response, Defendants indicate that Largent's report is not offered for the truth of the matter asserted, but to show the effect on the employer in terminating Plaintiff.  (ECF

25 │ No. 138 at 8.)  The Court agrees with Defendants.  *See Jones v. Los Angeles Cmty. Coll. Dist.*,

26 │ 702 F.2d 203, 205 (9th Cir. 1983) (finding that the district court properly considered documents, not to prove the truth of the allegations, "but to show that it had a legitimate basis for believing

27 │ [the plaintiff's] conduct warranted termination").  The Court is also unpersuaded by Plaintiff's arguments that the report was not properly authenticated and untrustworthy.  Therefore, the Court

28 │ OVERRULES Plaintiff's objection as to the investigation report.

1            *i.        Failure to Accommodate Theory*

2        To establish religious discrimination under a failure to accommodate theory, Plaintiff

3   must set forth a prima facie case of discrimination by showing: "(1) he had a bona fide religious

4   belief, the practice of which conflicts with an employment duty; (2) he informed his employer of

5   the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to

6   an adverse employment action because of his inability to fulfill the job requirement." *Peterson v.*

7   *Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). "If [Plaintiff] makes out a prima facie

8   failure-to-accommodate case, the burden then shifts to [the City of Stockton] to show that it

9   initiated good faith efforts to accommodate reasonably the employee's religious practices or that

10  it could not reasonably accommodate the employee without undue hardship." *Id.* (internal

11  quotation marks and citation omitted).

12       Defendants argue Plaintiff cannot state a prima facie case under this theory because

13  Plaintiff's own testimony confirms he did not have a bona fide religious belief that conflicted

14  with his employment requirements, and he never notified anyone at the City of such belief or a

15  conflict. (ECF No. 98-1 at 19.) In opposition, Plaintiff argues notice and a request for

16  accommodation are not relevant. (ECF No. 117 at 22.) Plaintiff also contends Defendants could

17  have accommodated Plaintiff by requiring him to charge annual leave for the time he attended the

18  Global Leadership Summit, as Defendants did for two of the other City employees who attended

19  the conference with Plaintiff. (*Id.*)

20       The Court agrees with Defendants that Plaintiff has not shown that "he had a bona fide

21  religious belief, the practice of which conflicts with an employment duty." *Peterson*, 358 F.3d at

22  606. Defendants cite *Tiano v. Dillard Dep't Stores*, 139 F.3d 679 (9th Cir. 1998), which is

23  instructive. In *Tiano*, the plaintiff sued her employer for religious discrimination after she was

24  terminated for attending a religious pilgrimage in October 1988. *Id.* at 680. Her employer had

25  denied her request to attend the pilgrimage based on the company's no-leave policy for the month

26  due to an impending October anniversary sale. *Id.* at 680–81. The district court found that the

27  plaintiff's "bona fide religious belief included a temporal mandate" that required her to go on the

28  pilgrimage at a specific time. *Id.* at 682. The Ninth Circuit reversed, explaining "where an

                                         8

1    employee maintains that her religious beliefs require her to attend a particular pilgrimage, she

2    must prove that the temporal mandate was part of the bona fide religious belief.  Otherwise, the

3    employer is forced to accommodate the personal preferences of the employee — the timing of the

4    trip.  Title VII does not protect secular preferences." *Id.*  The court concluded the plaintiff failed

5    to provide sufficient evidence that her religious belief required her to attend the pilgrimage in

6    October and noted the evidence strongly suggested "the timing of the trip was a personal

7    preference." *Id.* at 682–83.

8         FEHA and Title VII broadly define religious practice, and American courts are loath to

9    tell a person that his interpretation of his faith is a wrong one.  *See, e.g.*, *Heller v. EBB Auto Co.*,

10   8 F.3d 1433, 1438 (9th Cir. 1993).  But it is important that Plaintiff understood himself to be

11   engaged in a religious practice.  *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768,

12   772 (2015) (noting that wearing a headscarf is a "religious practice" under Title VII if the

13   plaintiff "sincerely believes that her religion so requires").

14        Plaintiff does not direct the Court to any evidence suggesting that his attendance at the

15   Global Leadership Summit was based on a bona fide religious belief.  Importantly, Plaintiff

16   admits he sought out leadership training, not based on any tenet of his religion, but at Montes's

17   direction.  (ECF No. 126 at 6.)  Plaintiff "looked into options but found no good programs" until

18   he learned about the Global Leadership Summit from George Liepart.  (*Id.* at 7.)  Plaintiff states

19   his purpose in attending the conference was to learn leadership principles and enhance leadership

20   skills to help him as Fire Chief.  (*Id.*)  Moreover, Plaintiff testified in his deposition that his

21   religious beliefs did not require him to attend this event.  (ECF No. 100-2 at 24–25.)  He further

22   testified that there was no conflict with his religion in attending a nonreligious leadership

23   conference, but it was not his preference to go to a nonreligious event.  (*Id.* at 25–27.)  Plaintiff's

24   testimony is fatal to his prima facie case for failure to accommodate.  *Peterson*, 358 F.3d at 606.

25   Put simply, the evidence shows Plaintiff's attendance at the Global Leadership Summit was based

26   on his preference, not a bona fide religious belief.  *See Tiano*, 139 F.3d at 682–83.

27        Accordingly, the Court GRANTS Defendants' motion for summary judgment as to

28   Claims One and Two based on failure to accommodate theory.

*ii.*     *Disparate Treatment Theory*

For a disparate treatment claim, the plaintiff may proceed by using the burden-shifting framework first set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or alternatively, may produce direct or circumstantial evidence that a discriminatory reason motivated the defendant in taking the challenged actions against the plaintiff. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). The plaintiff retains the burden of persuasion throughout, regardless of whether or not the plaintiff chooses to use the *McDonnell Douglas* framework. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Under *McDonnell Douglas*, a Title VII or FEHA plaintiff "must first establish a prima facie case of discrimination." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000). A plaintiff must show: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Id.*; *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000) (setting forth substantially the same elements in the FEHA context). The fourth element can also be characterized as "some other circumstance suggests discriminatory motive." *Guz*, 24 Cal. 4th at 355.

This shifts the "burden of production, but not persuasion, . . . to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang*, 225 F.3d at 1123–24. "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for" the challenged adverse employments actions. *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002). Whether a defendant has met its burden of production involves "no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). "In other words, the factfinder's general duty to draw all reasonable inferences in favor of the nonmovant does not require that the court make a credibility determination on the defendant's evidence at the summary judgment stage, even if it has reason to disbelieve that evidence." *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004).

If the defendant meets this burden of production, any presumption that the defendant discriminated "drops from the case." *St. Mary's Honor Ctr.*, 509 U.S. at 507–11; *see also Guz*,

24 Cal. 4th at 356 (explaining that the presumption "disappears" at this point).  At this point, the plaintiff must be given the opportunity to demonstrate that the proffered reason or reasons were pretext for intentional discrimination.  *Burdine*, 450 U.S. at 255–56; *Guz*, 24 Cal. 4th at 356.

The plaintiff may offer additional evidence to rebut the employer's proffered reasons but the plaintiff is not necessarily required to produce evidence in addition to the evidence produced to establish the prima facie case.  *Lyons*, 307 F.3d at 1112–13; *Chuang*, 225 F.3d at 1127.  This is because a reasonable factfinder may infer "the ultimate fact of intentional discrimination" without additional proof once the plaintiff has made out his prima facie case if the factfinder believes that the employer's proffered nondiscriminatory reasons lack credibility.  *Lyons*, 307 F.3d at 1112–13; *see also Chuang*, 225 F.3d at 1127 (same).

To establish that a defendant's nondiscriminatory explanation is pretext for discrimination, a plaintiff may rely on circumstantial evidence or direct evidence or both.  *See Chuang*, 225 F.3d at 1127.  Typically, circumstantial evidence offered by a plaintiff to prove pretext will take one of two forms.  *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005); *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003), *as amended* (Jan. 6, 2004).  The plaintiff may "make an affirmative case that the employer is biased."  *Coghlan*, 413 F.3d at 1095; *Stegall*, 350 F.3d at 1066 (describing the first option as "persuading the court that a discriminatory reason more likely motivated the employer").  Or, the plaintiff may "make his case negatively, by showing that the employer's proffered explanation for the adverse action is 'unworthy of credence.'"  *Coghlan*, 413 F.3d at 1095.

In employment discrimination actions, the plaintiff "need produce very little evidence to overcome an employer's motion for summary judgment . . . because the ultimate question is one that can only be resolved through a searching inquiry — one that is most appropriately conducted by a factfinder, upon a full record."  *Chuang*, 225 F.3d at 1124 (internal quotations and citation omitted).  Consequently, the "requisite degree of proof necessary to establish a prima facie case for Title VII . . . claims on summary judgment is minimal and does not even need to rise to the level of preponderance of the evidence."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994) (emphasis omitted).  "The plaintiff need

11

1    only offer evidence which gives rise to an inference of unlawful discrimination." *Id.* (internal

2    quotations and citation omitted).  "Establishment of the prima facie case in effect creates a

3    presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450

4    U.S. at 254.

5          Defendants argue Plaintiff cannot establish a prima facie case under the disparate

6    treatment theory because Plaintiff has not shown he was treated worse than similarly situated

7    individuals outside his protected class.  (ECF No. 98-1 at 20–21.)  Defendants further argue that

8    even if Plaintiff could establish a prima facie case, the City had legitimate non-discriminatory

9    reasons for terminating Plaintiff, which Plaintiff cannot overcome with evidence of pretext.  (*Id.*

10   at 22.)

11         In opposition, Plaintiff asserts he has provided direct evidence of religious discrimination

12   such that the Court need not apply the *McDonnell Douglas* test.  (ECF No. 117 at 15.)  Plaintiff

13   cites the following evidence: (1) Montes accused Plaintiff of being a part of a "Christian

14   coalition"; (2) Montes refused Plaintiff's request to use George Liepart to obtain leadership

15   training because she perceived him to be part of Plaintiff's "church clique"; (3) the notice of

16   investigation and notice of removal both cited Plaintiff's attendance at a "religious event" as a

17   reason for his firing, and the investigator listed this at the top of her list of "most serious" issues

18   of misconduct; and (4) in response to Plaintiff asserting his right to religious association, Deis

19   "blew up" at Plaintiff and threatened to "fire him, drag his name through the mud, and ruin his

20   reputation and that of his family" if he did not accept a demotion.  (*Id.* at 15–16.)

21         In arguing he has provided sufficient direct evidence of religious discrimination to avoid

22   the *McDonnell Douglas* burden-shifting test, Plaintiff relies on *France v. Johnson*, 795 F.3d 1170

23   (9th Cir. 2015).  (*Id.* at 15.)  In *France*, the plaintiff brought a claim brought under the Age

24   Discrimination in Employment Act based on allegations that his employer decided not to promote

25   him because of his age.  795 F.3d at 1172.  The district court granted summary judgment in favor

26   of the defendant-employer, and the plaintiff appealed.  *Id.* at 1171.  On appeal, the Ninth Circuit

27   explained in relevant part that "[d]irect evidence, which standing alone can defeat summary

28   judgment, must be evidence directly tied to the adverse employment decision."  *Id.* at 1172.  The

12

1   court stated, "stray remarks not directly tied to the decision-making process are not direct

2   evidence capable of defeating summary judgment." *Id.*  The court found that the plaintiff

3   presented both "some direct evidence" (an employer's statement about his preference for "young,

4   dynamic agents" to staff the positions at issue) and "some circumstantial evidence" (repeated

5   retirement discussions with the plaintiff) warranting application of the *McDonnell Douglas*

6   framework. *Id.*

7        Like *France*, Plaintiff has not persuaded the Court that his cited evidence — which

8   amounts to "stray remarks" by Montes and other circumstantial evidence — is strong enough to

9   defeat summary judgment standing alone. *Id.* at 1172.  Plaintiff's evidence is far from the type of

10  direct evidence of discrimination tied to adverse employment decisions the *France* court cited

11  from other cases, such as when an employer's policies or procedures explicitly depend on an

12  employee's age. *Id.* at 1173 (collecting cases).  For these reasons, "it is most appropriate to

13  consider the propriety of summary judgment under the *McDonnell Douglas* framework." *Id.*

14       As to Plaintiff's prima facie case, Defendants argue that Plaintiff has not shown he was

15  treated worse than similarly situated individuals.  (ECF No. 98-1 at 21.)  Defendants overlook

16  that the fourth element can also be satisfied by a showing that "other circumstances surrounding

17  the adverse employment action give rise to an inference of discrimination."  *Peterson*, 358 F.3d at

18  603.  Although Plaintiff is only required to show minimal evidence to establish his prima facie

19  case, the Court agrees with Defendants that Plaintiff has not provided sufficient evidence to give

20  rise to the inference that Defendants terminated him because of his religious beliefs, as will be

21  discussed below.

22       In Plaintiff's motion for summary judgment, he argues the "circumstance suggesting

23  discrimination" is the fact that "the first five charges against [Plaintiff] in his termination notice

24  and the 'most serious acts of misconduct' cited in Defendant's investigation were all on account

25  of his religion . . ." (ECF No. 134 at 13.)  As the Court sees it, the only evidence that touches on

26  Plaintiff's religious beliefs is as follows: (1) Montes's remarks about Plaintiff belonging to a

27  "Christian coalition"; (2) Montes's refusal of Plaintiff's request to receive leadership training

28  from George Liepart because he was part of Plaintiff's "church clique"; (3) the fact that Plaintiff's

13

1    attendance at what Defendants labeled a "religious event" on City time and with a City vehicle —

2    and his approval of three other employees to do the same — was cited as one of many examples

3    of misconduct that led to the removal decision; and (4) when Plaintiff argued that there were no

4    grounds for discipline in the charges, including his attendance at the leadership summit, Deis

5    blew up at him and threatened to drag Plaintiff's name through mud if he did not accept a

6    demotion in lieu of termination.

7          Montes's stray remarks about the "Christian coalition" and "church clique" are not

8    "egregious and bigoted insult[s] . . . that constitute[] strong evidence of discriminatory animus."

9    *Chuang*, 225 F.3d at 1128 (evidence that defendants used a racial slur and told Chinese plaintiffs

10   to "pray to [their] Buddha for help" was sufficient to show discriminatory motive).  Plaintiff does

11   not provide any further evidence to suggest Montes made the remarks based on any

12   discriminatory animus toward Plaintiff's faith.  Defendants' evidence shows those remarks were

13   made in the context of Montes's concerns that Plaintiff was showing favoritism towards those in

14   his Christian faith.  (ECF No. 99 at 17.)  In addition, the fact that Defendants considered the

15   leadership summit to be a "religious event" and cited Plaintiff's attendance at the event on City

16   time as a basis for termination is not sufficient to create a triable issue of material fact that

17   Defendants held discriminatory animus toward Plaintiff's specific faith.  Lastly, although Plaintiff

18   asserts Deis "blew up" at him during an argument about the investigation charges, Plaintiff offers

19   no evidence that Deis's reaction was motivated by discriminatory animus.  Because Plaintiff

20   cannot establish a prima facie case of religious discrimination, the Court GRANTS Defendants'

21   motion for summary judgment as to Claims One and Two based on disparate treatment theory.

22         The Court also emphasizes that even assuming Plaintiff had established a prima facie

23   disparate treatment claim with the foregoing evidence, Defendants have shown multiple

24   legitimate, nondiscriminatory reasons for Plaintiff's termination and Plaintiff has not shown

25   sufficient evidence of pretext to survive summary judgment.  The Court's finding will be

26   addressed in more detail with respect to Plaintiff's retaliation claims, but it applies with equal

27   force to his discrimination claims.

28   ///

1              B.        Retaliation Claims (Claims Three and Four)

2              Claim Three alleges retaliation under FEHA.  (ECF No. 51 at 11.)  Claim Four alleges

3     retaliation under Title VII.  (*Id.*)  As with the discrimination claims, the Court will address the

4     retaliation claims together.  Retaliation claims under Title VII and FEHA are assessed using the

5     *McDonnell Douglas* burden-shifting framework.  *McGinest*, 360 F.3d at 1124 (setting out the

6     standard for Title VII); *Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 244 (2016)

7     (setting out the standard for FEHA).  To establish a prima facie case of retaliation, a plaintiff must

8     point to sufficient evidence to permit a reasonable factfinder to conclude that: (1) he engaged in a

9     protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link

10    between his activity and the employment decision.  *McGinest*, 360 F.3d at 1124; *Moore*, 248 Cal.

11    App. 4th at 244.

12             As with disparate treatment cases, once the prima facie case is established, the burden of

13    production shifts to the employer to present a legitimate, non-retaliatory reason for the adverse

14    employment action.  *McGinest*, 360 F.3d at 1124; *Loggins v. Kaiser Permanente Internat.*, 151

15    Cal. App. 4th 1102, 1112 (2007).  If the employer carries this burden, a plaintiff must

16    demonstrate a genuine issue of material fact as to whether the reason advanced by the employer is

17    pretext for retaliation.  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *see*

18    *Loggins*, 151 Cal. App. 4th at 1112.  A plaintiff may show pretext "either directly by persuading

19    the court that a discriminatory reason more likely motivated the employer or indirectly by

20    showing that the employer's proffered explanation is unworthy of credence."  *Chuang*, 225 F.3d

21    at 1123.  Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence

22    must be both "specific" and "substantial" to create a genuine issue of material fact.  *Cornwell v.*

23    *Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006).

24             Defendant argues Plaintiff's retaliation claims fail as a matter of law because there is no

25    evidence Plaintiff engaged in a protected activity and there is no causal link between the alleged

26    protected activities and the City's termination decision.  (ECF No. 98-1 at 24–25.)  Even if

27    Plaintiff could make a prima facie case of retaliation, Defendants argue they have articulated

28    multiple legitimate, non-discriminatory reasons for Plaintiff's termination and Plaintiff has not

                                                      15

1    shown sufficient evidence of pretext.  (*Id.*)  The Court agrees with Defendants on their second

2    point.  Therefore, assuming without deciding that Plaintiff has shown a prima facie case,

3    Defendants are nonetheless entitled to summary judgment on Plaintiff's retaliation claims, as will

4    be discussed below.

5         At the outset, Defendants have met their burden of production to articulate legitimate,

6    non-retaliatory reasons for terminating Plaintiff.  The notice of removal stated the City was

7    removing Plaintiff "because of incompatibility of management styles, change in administration,

8    and [Plaintiff's] apparent inability and/or unwillingness to implement City goals and policies, as

9    indicated by the findings in the confidential investigative report . . . ."  (ECF No. 99-1 at 998.)  As

10    discussed in more detail in the background section of this Order, the notice also summarized at

11    least ten instances of Plaintiff's misconduct "that support[ed] the City's conclusion."  (*Id.* at 998–

12    1000.)  Defendants also offered Plaintiff the opportunity to respond to the removal allegations at a

13    hearing, but Plaintiff failed to refute any allegations from the investigation report.  (*Id.* at 1041.)

14    Therefore, Defendants have met their burden of production.

15         Plaintiff in turn fails to provide sufficient evidence that Defendants' reasons for his

16    termination were pretextual.  It bears mentioning that Plaintiff does not make unique arguments

17    regarding pretext for his retaliation claims and instead incorporates by reference the arguments

18    for pretext presented in conjunction with his discrimination claims.  (ECF No. 117 at 26.)

19    Plaintiff does not address evidence of pretext in his own motion for summary judgment.  (*See*

20    ECF No. 134.)  Plaintiff's arguments about pretext are largely conclusory statements with little

21    legal analysis or support.  For example, Plaintiff argues, without citing any specific evidence, that

22    "Defendants' uninformed, baseless, and shifting reasons for Plaintiff's termination is [ ] evidence

23    of retaliatory animus and pretext."  (ECF No. 117 at 19.)  Plaintiff also vaguely asserts that

24    Defendants' "rationale for termination is unsupported by documentation."  (*Id.*)  Conclusory

25    statements are insufficient to demonstrate pretext.  *See Moore v. California Dep't of Corr. &*

26    *Rehab.*, 1:10-cv-1165 LJO SMS, 2012 WL 5288785, at *10 (E.D. Cal. Oct. 24, 2012) ("[P]laintiff

27    cannot create a genuine issue of pretext to survive a motion for summary judgment by relying

28    solely on unsupported speculations and allegations . . . .").

As for actual evidence, Plaintiff contends Interim Director of Human Resources Dionysia Smith asserted that Defendants failed to follow the progressive discipline or review policies related to Plaintiff and other department heads were not treated similarly to Plaintiff.  (ECF No. 117 at 20.)  Plaintiff also contends Smith and Director of Human Resources Dianna Gonzalez stated there was no reason to fire Plaintiff.  (*Id.*)  The cited portions of Smith's declaration, paragraphs 9 and 10, do not support Plaintiff's contentions and merely state that in Smith's experience, City Managers did not become involved in disciplinary matters within the city departments until Montes became supervisor.  (ECF No. 120 at 2–3.)  Smith further states she did not perceive there to be a legitimate business need for Montes to become involved in such a manner.  (*Id.*)  Smith does not discuss Defendants' alleged failure to follow progressive discipline policies (or any requirement to follow such policies) as to Plaintiff, nor does she state that other department heads were treated differently from Plaintiff.  (*See id.*)  Moreover, the fact that Smith and Gonzalez saw no reason to terminate Plaintiff is of questionable relevance, as there is no evidence they were involved in the decision-making process.

Plaintiff further argues Defendants sought to discipline him "for false reasons."  (ECF No. 117 at 20.)  As an example, Plaintiff states Defendants' claim that Plaintiff failed to disclose he had co-ownership in the cabin was false because Defendants knew about Plaintiff's ownership in the cabin for "awhile" before it became an issue and told Plaintiff he was not required to disclose the cabin ownership.  (*Id.*)  As other examples of pretext, Plaintiff argues he was falsely charged with several other claims, including inadequate discipline for decisions made by Montes, off duty union conduct that Plaintiff had little control over, mishandling of budget cuts that were not grounds for termination in the notice of intent to remove Plaintiff, and violation of certain disclosure requirements despite having made proper disclosures.  (*Id.* at 21.)

None of Plaintiff's evidence "directly" establishes that Defendants terminated Plaintiff based on Plaintiff's alleged complaints about what he perceived to be religious discrimination.  *Chuang*, 225 F.3d at 1123.  Plaintiff also fails to show pretext "indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id.*  In the notice of removal, Defendants offered at least ten examples of Plaintiff's misconduct.  (ECF No. 99-1 at 999–1000.)

1    Of these, the only examples Plaintiff challenges with actual citations to the record are his failure

2    to disclose co-ownership in the cabin, failure to recommend appropriate discipline, and failure to

3    prevent the public from perceiving firefighters were engaged in union activities while on-duty.

4    (ECF No. 117 at 20–21.)  Plaintiff's arguments are unpersuasive.  As to disclosure of the cabin,

5    none of the evidence Plaintiff cites shows that Montes knew of the cabin and Plaintiff's

6    deposition testimony makes clear that he did not tell the investigator that he was co-owner of the

7    cabin with potential conflicts of interest.  (ECF No. 100-2 at 63.)  As to failure to discipline,

8    Plaintiff offers only a single sentence with no details about how he was held accountable for

9    Montes's inadequate discipline decisions.  (ECF No. 117 at 21.)  As to union activities, Plaintiff

10   asserts Defendants terminated him for off-duty union conduct Plaintiff "had no control over,"

11   (*id.*), when the notice of removal clearly cites on-duty union activities, such as "using City

12   equipment to clean the Union Hall while on-duty" and "asking permission for on-duty personnel

13   to set up for a Union-sponsored retirement dinner."  (ECF No. 99-1 at 1000.)  As for Plaintiff's

14   arguments regarding his alleged mishandling of budget cuts, it is worth noting that such

15   allegations are not listed in the notice of removal.  Yet Plaintiff argues Defendants' reference to

16   budgetary issues in their motion for summary judgment is further evidence of pretext, especially

17   considering Defendants' failure to discipline the other department heads for "catastrophic

18   financial losses."  (ECF No. 117 at 20.)  Not only were budgetary concerns not listed a basis for

19   Plaintiff's termination, but Plaintiff fails to provide evidence that those department heads were

20   similarly situated to Plaintiff.

21        Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence

22   must be both "specific" and "substantial" to create a genuine issue of material fact.  *Cornwell*,

23   439 F.3d at 1029.  None of Plaintiff's assertions are evidence from which a reasonable factfinder

24   could infer that Defendants' proffered explanations are pretext for retaliation.

25        Accordingly, the Court GRANTS Defendants' motion for summary judgment as to

26   Plaintiff's retaliation claims.

27   ///

28   ///

C.      Failure to Prevent Discrimination and Retaliation Claims (Claim Five)

Claim Five alleges failure to prevent discrimination and retaliation under FEHA.  (ECF No. 51 at 12.)  Defendants move for summary judgment on this claim, arguing Plaintiff was not subject to any underlying discrimination or retaliation.  (ECF No. 98-1 at 26.)

A plaintiff seeking to recover damages based on a claim of failure to prevent discrimination or retaliation must show three essential elements: (1) he was subjected to discrimination or retaliation; (2) the defendant failed to take all reasonable steps to prevent discrimination or retaliation; and (3) the defendant's failure caused the plaintiff to suffer injury, damage, loss, or harm.  *Hatfield v. DaVita Healthcare Partners, Inc.*, No. C 13–5206 SBA, 2014 WL 2111237, at *5–6 (N.D. Cal. May 20, 2014) (setting out the standard under FEHA); *see also Williams v. Cty. of Marin*, No. C03–2333 MJJ, 2004 WL 2002478, at *10 (N.D. Cal. Sept. 8, 2004) (suggesting the same standard would apply under Title VII and that such claims have been recognized).

Plaintiff is unable to satisfy the first element as the Court has granted summary judgment in favor of Defendants on Plaintiff's discrimination and retaliation claims.  Therefore, Defendants' motion for summary judgment on Plaintiff's failure to prevent discrimination and retaliation claim is GRANTED.

D.      Section 1983 Claims (Claim Six)

Lastly, Defendants move for summary judgment as to Claim Six, which alleges Defendants deprived Plaintiff of his First Amendment right to "association with David Macedo through their joint ownership of real estate and his association with George Liepart through their religious activities as well as [Plaintiff's] attendance" at the Global Leadership Summit.  (ECF No. 51 at 13.)  Plaintiff argues this claim is "premised on the evidence that Defendants violated his freedom of expressive association based on both religion and his past and present relationship to the firefighter's union."  (ECF No. 117 at 27.)  Plaintiff raises various arguments about associations unrelated to Macedo and Liepart.  (*See id.*)  However, claims based on associations other than with Macedo and Liepart are beyond the scope of Claim Six — which is expressly limited to Plaintiff's associations Macedo and Liepart (ECF No. 51 at 13) — and are thus not

19

1    properly before the Court.  *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992

2    (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate

3    pleadings.").  Similarly, to the extent Plaintiff now argues he brings a free exercise claim (ECF

4    No. 134 at 18–19), the Court notes that Plaintiff did not plead such a claim and declines to allow

5    Plaintiff to proceed under a free exercise theory.  In sum, the Court will only address Plaintiff's

6    claim that Defendants violated his First Amendment right to expressive associations as to Macedo

7    and Liepart.

8         The Supreme Court has held that protected First Amendment associational activity

9    includes "expressive association."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984).

10   Expressive association includes activity involving "a wide variety of political, social, economic,

11   educational, religious, and cultural ends."  *Id.* at 622.  The right to expressive association is the

12   "right to associate for the purpose of engaging in those activities protected by the First

13   Amendment — speech, assembly, petition for the redress of grievances, and the exercise of

14   religion."  *Id.* at 618.  "[A] plaintiff alleging an adverse employment action in violation of his

15   First Amendment rights must show that his protected conduct was a 'substantial' or 'motivating'

16   factor for the employer's action."  *Strahan v. Kirkland*, 287 F.3d 821, 825 (9th Cir. 2002).  "The

17   burden then shifts to the employer to demonstrate that it would have acted the same way even in

18   the absence of the protected conduct."  *Id.*

19        As for Plaintiff's alleged association with Macedo, Plaintiff does not provide sufficient

20   evidence that co-owning a cabin with Macedo is "expressive association" protected by the First

21   Amendment.  *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) ("The First Amendment's

22   protection of expressive association is not reserved for advocacy groups.  But to come within its

23   ambit, a group must engage in some form of expression, whether it be public or private.").

24   Plaintiff has not demonstrated that in co-owning a cabin with Macedo, he "advocated any

25   viewpoints, political, social, or otherwise."  *See Hudson v. City of L.A.*, No. CV 06-942DSFSSX,

26   2006 WL 4729243, at *7 (C.D. Cal. Sept. 7, 2006) (dismissing expressive association claim based

27   on the plaintiff's termination for his membership in a motorcycle club).  As such, Plaintiff's §

28   1983 claim as to his association with Macedo fails as a matter of law.

1    As for Plaintiff's alleged association with Liepart, Plaintiff argues he served on a church
2    school board with Liepart, which was a protected association that was listed as misconduct
3    warranting termination.  (ECF No. 117 at 28.)  Plaintiff makes no other arguments specific to
4    Liepart in this section of his opposition to Defendants' motion for summary judgment.  In his
5    own motion for summary judgment, Plaintiff adds that Liepart offered Plaintiff the tickets to the
6    Global Leadership Summit, which creates a "direct link" between the termination charges and
7    Plaintiff's association with Liepart.  (ECF No. 134 at 24.)  Plaintiff also mentions he was
8    terminated because Liepart used Plaintiff's picture and endorsement on his website.  (*Id.* at 25.)
9    Plaintiff's scattershot arguments make it difficult to discern whether any aspect of his
10   association with Liepart constitutes "expressive activity" subject to First Amendment protection.
11   However, even assuming Plaintiff's activities with Liepart were protected, Plaintiff has not
12   produced evidence to support an inference his association with Liepart was a motivating or
13   substantial factor in his termination.  *See Strahan*, 287 F.3d at 825–26.  Of the ten specific
14   examples of misconduct cited in the notice of removal, Liepart is mentioned only twice.  (ECF
15   No. 99-1 at 999.)  First, the notice states that Liepart was the owner of a consulting firm that
16   provided services to the fire department and Plaintiff failed to disclose his personal relationship to
17   Liepart, including the fact that the two were engaged in a project to build a church school.  (*Id.*)
18   The notice adds that Plaintiff did not properly investigate complaints in 2005 that Liepart
19   solicited donations from fire department employees for the church school project.  (*Id.*)  Second,
20   the notice states Plaintiff failed to investigate after receiving information that his photograph and
21   endorsement appeared on Liepart's business website.  (*Id.*)  Plaintiff has not shown that his mere
22   association with Liepart was a factor in his termination as opposed to his failure to disclose the
23   relationship or investigate complaints about Liepart's conduct.  *See Strahan*, 287 F.3d at 825–26.
24   In addition, there is overwhelming evidence that Defendants had legitimate, nonretaliatory
25   reasons for Plaintiff's termination, as already discussed in detail.  In the context of Plaintiff's
26   association with Liepart, the notice of removal indicates Plaintiff failed to disclose his personal
27   and business relationship with Liepart, who provided consulting services to the City.  (ECF No.
28   99-1 at 999.)  As for Plaintiff's attendance at the Global Leadership Summit after being given

1    tickets by Liepart, the notice of removal indicates Plaintiff attended the event on City time and

2    allowed other employees to do the same.  (*Id.*)  Further, as already discussed at great length,

3    Defendant presented numerous grounds for removal that have nothing to do with Plaintiff's

4    association with Liepart, and Plaintiff has not shown sufficient evidence that those grounds were

5    pretextual.  *See Stephens v. Douglas Cnty. Fire Dist. No. 2*, 205 F. Supp. 3d 1233, 1242 (E.D.

6    Wash. 2016) ("Even assuming, arguendo, that [the plaintiff's] union activities were a substantial

7    or motivating factor in his terminations, the Court finds that the District had legitimate,

8    nonretaliatory reasons, for [the plaintiff's] termination . . . based on [his] multiple acts of

9    misconduct.").

10          Accordingly, Plaintiff's § 1983 claim as to his association with Liepart fails as a matter of

11   law.  Because Plaintiff has failed to establish a constitutional violation based on his alleged

12   associations with Macedo and Liepart, Defendants' motion for summary judgment on Plaintiff's §

13   1983 claim is GRANTED.

14          **IV.    CONCLUSION**

15          For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary

16   Judgment (ECF No. 98), DENIES Plaintiff's Motion for Summary Judgment (ECF No. 133), and

17   DENIES as moot Plaintiff's Motions to Strike (ECF Nos. 130, 140, 149).  The Clerk of Court is

18   directed to enter judgment in Defendants' favor and close the case.

19          IT IS SO ORDERED.

20   DATED:  March 1, 2022

21

22

23                                  _____
                                    Troy L. Nunley

24                                  United States District Judge

25

26

27

28